# In the United States Court of Federal Claims

No. 13-499; 13-800
Filed: April 14, 2021

| | |
|---|---|
| **LODGE CONSTRUCTION, INC.,** | |
| *Plaintiff*, | |
| v. | |
| **THE UNITED STATES,** | |
| *Defendant.* | |

*Michael H. Payne*, Cohen Seglias Pallas Greenhall & Furman, Philadelphia, PA, for Plaintiffs.

*John H. Roberson*, Senior Trial Counsel, with whom were *Deborah A. Bynum*, Assistant Director, *Robert E. Kirschman*, Director, Commercial Litigation Branch, and *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

This Contracts Dispute Act ("CDA") case involves the catastrophic failure of a cofferdam in south Florida. Plaintiff, Lodge Construction, Inc. ("Lodge"), originally brought several claims seeking damages, retroactive modification of the construction contract, and conversion of its termination for default into a termination for convenience. On the heels of several fraud counterclaims brought by the United States, Lodge narrowed its challenge by withdrawing several claims. Lodge's only remaining claims seek a 129-day contract extension and a conversion of the termination of default into a termination for convenience. (Case No. 13-500 Lodge Second Am. Compl. at 14, ECF No. 122; Compl. at 10, ECF No. 1).[1]

On August 27, 2020, the United States informed the Court of its intention to move for summary judgment with respect to both liability and fraud. (Case No. 13-500 ECF No. 188). The Court ordered the parties to brief the liability and fraud issues separately. (*See* Oct. 30, 2020

---

[1] This case originally included claims brought by Lodge's surety, which were consolidated with Lodge's claims under Lead Case No. 13-500. The litigation involving the sureties has been transferred to the District of Massachusetts. Lodge's pending claims have been consolidated under Lead Case No. 13-499, but its Second Amended Complaint, which asserts the contract extension claim, is docketed under Case No. 13-500. All docket references are to Lead Case No. 13-499 unless otherwise noted.

Sched. Order, ECF No. 18). Lodge also cross-moved for summary judgment with respect to the fraud issue. (Pl.'s Fraud Opp. and Cross-Mot. for Sum. J. ("Pl.'s Fraud MSJ"), ECF No. 21). After briefing on both issues concluded, Lodge moved for leave to file surreplies on both issues. (Pl.'s Mot. for Leave, ECF No. 26). The United States opposed that request. (ECF No. 28). The Court does not believe additional briefing would be helpful to the adjudication of the parties' summary judgment motions.[2] Accordingly, Lodge's Motion for Leave is **DENIED**. Thus, the summary judgment issues are ripe for decision.

To grant summary judgment, the Court must determine that there is no genuine dispute of material fact. RCFC 56(a). For reasons the Court will briefly outline, the Court finds that issues of material fact preclude summary judgment on both the liability and fraud issues. However, in its Opposition and Cross-Motion for Summary Judgment on Fraud, Lodge raises a timing issue that the Court finds fit to resolve. Lodge argues that the United States' claims under Counterclaim Count II, based on the CDA's anti-fraud provision, are time-barred. (Pl.'s Fraud MSJ at 49). The Court agrees with Lodge that the claim is time-barred. Consequently, the Court lacks subject matter jurisdiction to adjudicate the United States' Counterclaim Count II and it must be dismissed.

Accordingly, the United States' motions for summary judgment on liability and fraud, (ECF Nos. 19, 20), are **DENIED**. Lodge's Cross-Motion for summary judgment on fraud is **DENIED**.[3] Based on issues Lodge raised in its Cross-Motion for summary judgment on fraud, the Court **DISMISSES** the United States' Counterclaim Count II for lack of subject matter jurisdiction.

## I.   Background[4]

In 2010, the U.S. Army Corps of Engineers ("the Corps") awarded Lodge a competitively-bid fixed price contract to rehabilitate a levee in Palm Beach County—part of the Corps' broader "Everglades Update" restoration mission. (Case No. 13-800 Compl. at ¶¶ 5–9). This project required subsurface work, and thus Lodge constructed a temporary cofferdam so that it could perform that subsurface work "in the dry." (*Id*. at ¶ 11). Pursuant to the solicitation,

---

[2] "The decision to grant or deny leave to file a surreply is committed to the sound discretion of the court, and in making its decision, the court considers whether the surreply is helpful to the adjudication of the motion and whether the defendant will be unduly prejudiced if the court grants leave." *Ute Indian Tribe of Uintah & Ouray Indian Reservation v. United States*, 145 Fed. Cl. 609, 617 n. 6 (2019) (citing *Plunkett v. Dep't of Justice*, 249 F. Supp. 3d 73, 74 n.2 (D.D.C. 2017)).

[3] Lodge's Motion (ECF No. 21) is styled as a cross-motion for summary judgment, rather than a motion to dismiss. Therefore, the Court dismisses Counterclaim Count II under RCFC 12(h)(3).

[4] Given the disposition of the motions in this case, and the pendency of one or more trials, the Court provides only a brief overview of the facts, as gleaned from Lodge's Complaints and the Court's docket entries. The Court makes no factual findings here and draws all reasonable inferences in favor of the nonmovant.

Lodge was required to submit a design based on the Corps' subsurface geotechnical site inspection and analysis. (*Id*. at ¶¶ 11–16). After revisions, the Corps accepted Lodge's final cofferdam design proposal in July 2011, beginning work soon thereafter. (*Id*. at ¶¶ 40–45).

In mid-March 2012, water breached two sections of the cofferdam's sheet pile wall. (Case No. 13-800 Compl. at ¶ 46). As described by one worker present at the time of the initial failure:

> [W]e had started placing soil cement when I heard like a bang that was a little different than that, different than that banging against the wall, and I looked up on the levy, and a couple of us went up to the top of the levy, because I could be anywhere on the slope watching the soil cement, and I saw the backhoe walking very fast and you could see water chasing it. There was like a wave of, you know, a foot high or so was coming down this trench in the dry cofferdam, and the backhoe was going as fast as he could, because the ramp to get out of that hole is very close to where we were working. And I instantaneously knew something was happening to the bulkhead . . ..
>
> . . .
>
> The sheet piling was lifting, was somewhat lifted and continued to creak as you heard the metal of the waler and batter pile scraping as the top of the sheet pile was coming up, and as it came up more water was flowing, and the sheet piling was beginning to bend in. And, you know, it was obvious what happened. And it was not necessarily controlled flow of water. It was what I would describe as catastrophic failure.
>
> . . .
>
> The water continued to rise. And by the time -- you know, this was actually pretty scary, because I'm thinking if that levy failed, that 17-foot wall of water is coming down this river to my house, which is -- my dock is down here on the water, so I'm just looking at this, I've never been involved in such a catastrophic failure, and actually I get emotional thinking about it right now.

(Def.'s Mot. for Sum. J. on Liability ("Def.'s Liability MSJ") Ex. B, ECF No. 19-2. (Deposition of R. Coddington)).

After the failure, the Corps retroactively disapproved of Lodge's cofferdam design. (*Id*. at ¶ 52). Later in the spring of 2012, Lodge submitted two certified claims to the Contracting Officer: the first regarding the retroactive disapproval of its sheet pile design and the second regarding Lodge's entitlement to compensation for the actual breach of the sheet pile wall. (Case No. 13-800 Compl. at ¶ 54). Several times, the parties exchanged correspondence about responsibility for the sheet pile breach and the Corps' request that Lodge submit a new sheet pile design. The Corps eventually demanded that Lodge submit a new design not later than May 29, 2012. (Def.'s Liability MSJ Ex. R). Finally, on July 23, 2012, citing Lodge's failure to produce a new cofferdam design or otherwise make progress toward completing the project by the contractual deadline, the Corps terminated Lodge for default. (Def.'s Liability MSJ Ex. JJ).

Later, in October 2012, the Contracting Officer denied Lodge's wall breach and design claims. (Case No. 13-800 Compl. at ¶¶ 65, 77). This litigation followed.

In 2017 the United States sought and was granted leave to amend its Answer to assert counterclaims. *See Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51 (2017) (docketed in Case No. 13-500 at ECF No. 93). Those counterclaims accused Lodge of fraud in its submissions to the contracting officer and fraud in maintaining those claims in this Court. (Case No. 13-500 Def.'s Am. Answer and Counterclaims, ECF No. 95). Specifically, the United States alleged fraud related to three categories of conduct: (1) false delay-day costs; (2) double-billing and exaggerated equipment costs; and (3) improperly passed-through claims of a subcontractor. (Case No. 13-500 Def.'s Am. Answer and Counterclaims at 16, 19, 21). Over the next two years, the parties conducted discovery on the fraud issues. (*See, e.g.*, Case No. 13-500 Scheduling Order, ECF No. 153 (setting final deadlines for fraud depositions and expert reports)).

Now, approaching eight years of litigation, the parties present dispositive motions. However, as explained below, the Court finds that the majority of the issues the parties raised in those briefs are more appropriate for trial rather than summary judgment. The Court first addresses the timeliness issue of the United States' Contract Disputes Act counterclaim.

## II.  Discussion

### A.  Count II of the United States' Counterclaims is time-barred.

Lodge argues that the United States' claims under Counterclaim Count II, based on the CDA's anti-fraud provision, are time-barred. (Pl.'s Fraud MSJ at 49; *see also* Def.'s Am. Answer and Counterclaims at 27, ECF No. 12). Lodge asserts that the prescribed six-year limitations period began running when the claims were submitted to the Contracting Officer in 2012, and elapsed six years later because no court intervened in that time period to "determine" liability as required by 41 U.S.C. § 7103(c)(2). (Pl.'s Fraud MSJ at 49–50).

In opposition, the United States argues that the Court should apply the "discovery rule,"[5] impose equitable tolling, and that the Court should read the statute such that a "determination" need only be made by the U.S. Department of Justice to satisfy the requirements of § 7103(c)(2). The Court disagrees with the United States on all fronts and finds that Counterclaim Count II, brought under the CDA's anti-fraud provision, is barred by a six-year statute of limitations. Therefore, the Court lacks jurisdiction and must dismiss that claim pursuant to RCFC 12(h)(3).

The CDA requires contractors to submit and certify claims over $100,000. 41 U.S.C. § 7103(a), (b). As an enforcement mechanism, subsection (c) contains an anti-fraud provision with

---

[5] "A discovery rule necessarily adjusts the beginning of a statute of limitations to the circumstances of an individual case. The rule typically asks when a [claimant] knew or reasonably should have known of enough facts to proceed with her case" and "tethers accrual of the cause, and with it the start of the limitations period" to that knowledge. *Cloer v. Sec. of Health and Human Serv*, 654 F.3d 1322, 1340 (Fed. Cir. 2011).

somewhat surprising limitations language:

> **(2) Liability of contractor.**--If a contractor is unable to support any part of the contractor's claim and it is determined that the inability is attributable to a misrepresentation of fact or fraud by the contractor, then the contractor is liable to the Federal Government for an amount equal to the unsupported part of the claim plus all of the Federal Government's costs attributable to reviewing the unsupported part of the claim. *Liability under this paragraph shall be determined within 6 years of the commission of the misrepresentation of fact or fraud*.

41 U.S.C. § 7103(c)(2) (emphasis added). Under a plain reading of the statute, there must be a "determin[ation]" within six years that the contractor is liable for fraud. However, the statute does not specify what a "determination" of liability entails, or who must make such a "determination."

To interpret what a determination of liability means under this statute, the Court must first explain the relevant starting point for the six-year period. Because the statute at issue is a civil penalty, the starting point cannot be tolled by the discovery rule, thus the six-year clock starts ticking when the fraud is committed. *Gabelli v. S.E.C.*, 568 U.S. 442 (2013) (holding that the "discovery rule" does not apply to civil penalty enforcement actions, and the statute of limitations starts running when the fraud occurs.). In *Hernandez, Kroone & Assocs., Inc. v. United States*, the court explained that "[r]ecovery under 41 U.S.C. § 7103(c)(2) comprises a civil penalty." 110 Fed. Cl. 496, 529 n. 8 (2013) (citing *Daewoo Eng'g & Const. Co. v. United States*, 557 F.3d 1332, 1340 (Fed. Cir. 2009); and *Gabelli*, 568 U.S. 442). This Court agrees with the *Hernandez, Kroone* court's reading of *Daewoo*, which repeatedly describes a monetary judgment awarded pursuant to the CDA anti-fraud provision as a "penalty." *Daewoo*, 557 F.3d at 1340. Therefore, despite the United States' arguments to the contrary, the six-year clock begins ticking when the fraud occurs, not when the government discovers it. *Gabelli*, 568 U.S. at 454.

Now, this Court must decide is what it means for "[l]iability [to] be determined" in order to satisfy the six-year limitation. There has been no uniform treatment of this provision. At least two decisions of this Court have considered this peculiar language and have come to opposite conclusions as to its meaning. Each provides only minimal discussion of the issue.

In *UMC Elec. Co. v. United States*, relying on legislative history, the court found that Congress attempted to "make it clear to all parties involved in government contract claims that strict penalties are in effect for those parties who are unable to support their of [sic] misrepresentation of fact or fraud." *UMC Elec.*, 45 Fed. Cl. 507, 509 (1999) (quoting S.Rep. No. 95–1118 (1978)). The court then implied that the Department of Justice could make a "determination" that would satisfy the terms of § 7103(c)(2). *UMC Elec.*, 45 Fed. Cl. at 509 ("Surely, Congress did not intend to allow for the possibility that a plaintiff could engage in protracted pre-trial and trial procedures in order to escape liability when that plaintiff is found by a court to have committed fraud.").

But the court in *UMC Elec.* was not required to confront the determination issue head-on because it found that the plaintiff's fraud in that case was "was repeated and ongoing" up through post-trial briefing. *Id*. Thus the claim was not time-barred when the court rendered its

decision. *Id*. The notion that malefactors should not escape judgment by utilizing overly strict limitations provisions is alluring, but conflicts with the plain text of the statute.

Over a decade later, in *Hernandez, Kroone*, the six-year clock imposed by § 7103(c)(2) expired prior to judgment. In a footnote, that court concluded that because the briefing had not been completed, the six-year period had elapsed prior to the entry of a trial decision and the § 7103(c)(2) claim would have been barred had the court reached the issue. *Hernandez, Kroone*, 110 Fed. Cl. at 529 n. 8.

At least one case from our predecessor court suggests the § 7103(c)(2) requirement could be satisfied by *filing* a claim before six years elapsed. *SGW, Inc. v. United States*, 20 Cl. Ct. 174, 181 (1990) (comparing the statute of limitations to the time "Defendant's counterclaims were filed" in court). However, the continued viability of that reasoning is suspect given that it applies the discovery rule doctrine to a civil penalty enforcement action, which the Supreme Court later rejected. *Gabelli*, 568 U.S. 442.

With these three diverging conclusions in mind, the Court relies instead on the plain text of the statute. *White v. United States*, 543 F.3d 1330, 1337 (Fed. Cir. 2008) ("First and foremost, it is a bedrock canon of statutory construction that our judicial inquiry ends where statutory language is plain and unambiguous."); *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183, (2004) (explaining that "there is no occasion to resort to legislative history" where the statutory text is clear). The relevant portion of the statute provides: "[l]iability under this paragraph shall be determined within 6 years of the commission of the misrepresentation of fact or fraud." § 7103(c)(2).

Affording the statute its plain and ordinary meaning yields a result which the United States unsurprisingly seeks to avoid. The United States argues that "shall be determined" means only that the Department of Justice must make a fraud determination and assert fraud claims prior to expiration of the six-year deadline. (Def.'s Reply at 6, ECF No. 24). The United States musters support from *SGW, Inc.* as well as Federal Acquisition Regulation ("FAR") § 33.201, which states:

> Accrual of a claim means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some injury must have occurred. However, monetary damages need not have been incurred.

The FAR's definition of "accrual of a claim" brings the Court no closer to interpreting "shall be determined" as the statute provides. And, as the Court stated earlier, the reasoning of *SGW, Inc.* is questionable after the holding in *Gabelli*. In any event, this Court is not required to

adopt *SGW, Inc.*'s reasoning, as cases from the Claims Court are merely persuasive.[6]

The United States essentially requests that the Court interpret § 7103(c) to impart a filing deadline on the Department of Justice. But if Congress wanted to create a filing deadline, it certainly knew how to do so. *See, e.g.*, 41 U.S.C. § 7104(b)(3) ("A contractor *shall file* any action [appealing a contracting officer's decision] within 12 months from the date of receipt of a contracting officer's decision under section 7103 of this title.") (emphasis added). The Supreme Court has observed that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up); *see also Heino v. Shinseki*, 683 F.3d 1372, 1379 (Fed. Cir. 2012) (endorsing the *Russello* principle).

Lodge reads this provision more naturally as requiring *the Court* to make the determination before the six-year mark from the commission of the fraud. (Pl.'s Reply at 17, ECF No. 25). The Court concludes that Lodge's reading is correct. The Department of Justice, in this context, may "allege," "claim," or "assert" liability, but only courts "determine" liability. Otherwise, if the Department of Justice could affix "liability," there would be no need for court adjudication of the matter. Lodge submitted claims related to the equipment costs and delay-day costs to the Contracting Officer in June 2012. (Case No. 13-500 Def.'s Am. Answer and Counterclaims at 15). Therefore, that conduct, even if fraudulent, as alleged by the United States, falls outside the six-year statute of limitations.

The United States argues that even if the delay-day costs and exaggerated equipment costs claims are barred, the six-year period has not elapsed on the allegedly fraudulent submission and Lodge's continued maintenance of its pass-through claims in this Court. However, the *Daewoo* court explained that "claims" for the purposes of the CDA (and thus § 7103(c)) are a term of art that entail: "(1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Daewoo*, 557 F.3d at 1336 (internal quotations omitted); *see also* FAR § 33.201; *Gulf Grp. Gen. Enterprises Co. W.L.L. v. United States*, 114 Fed. Cl. 258, 319 (2013) ("A complaint . . . cannot serve as the basis for liability under the [CDA] because it is not submitted to a contracting officer."); *SITCO Gen. Trading & Contracting Co. v. United States*, 87 Fed. Cl. 506, 509 (2009) ("A complaint filed in this court does not seek a decision from the contracting officer or meet the other CDA requirements of a 'claim.'"). Thus, Lodge's maintenance of allegedly fraudulent legal claims in this Court cannot provide the basis for liability under § 7103(c)(2), and therefore, the last instance of fraudulent conduct, if any, for the purposes of that provision occurred in June 2012.

Aside from raising the discovery rule, which the Court has explained does not apply here, the United States argues that § 7103(c) is susceptible to the equitable tolling doctrine. (Def.'s Reply at 3). Though sympathetic, the Court again disagrees. "As a general matter, equitable

---

[6] Court of Claims decisions are binding precedent on this Court. Claims Court decisions are not. *National Neighbors, Inc. v. U.S.*, 839 F.2d 1539, 1542 (Fed. Cir. 1988) ("We recognize that, although this court is bound by the case law precedent set forth by the Court of Claims, we are not bound by the case law precedent of the Claims Court.")

tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Checo v. Shinseki*, 748 F.3d 1373, 1376 (Fed. Cir. 2014). Equitable tolling may be justified if the claimant can demonstrate one of three extraordinary circumstances exists: "(1) a defective pleading was filed during the statutory period; (2) [the claimant] was induced or tricked by [the other party's] misconduct into allowing the filing deadline to pass; or (3) [the claimant's] injury was inherently unknowable." *Crawley v. United States*, 145 Fed. Cl. 446, 452 (2019) (also noting that "[e]quitable tolling of the statute of limitations should be applied 'sparingly.'") (citing *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 90 (1990) and *Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250 (2016)). To the extent that the briefing meagerly addresses this issue, none of these extraordinary circumstances apply here. (*See* Def.'s Reply at 3–7). Furthermore, lack of knowledge that a claim exists is not a basis for equitable tolling. *K. G. v. Sec'y of Health & Hum. Servs.*, 951 F.3d 1374, 1380 (Fed. Cir. 2020). The United States bears the burden but cannot demonstrate that the circumstances of this case would justify equitable tolling. Therefore, the Court declines to apply the sparingly-used doctrine.

In summary, § 7103(c) is a civil penalty and thus not subject to the discovery rule. It requires that a court determine liability within six years of the fraudulent conduct. The equitable tolling doctrine is not justified here, and the Court has not made a liability determination. Thus, the statute of limitations has elapsed on the United States' Counterclaim Count II—the CDA's anti-fraud provision. Accordingly, pursuant to RCFC 12(h)(3),[7] Counterclaim Count II must be dismissed for lack of subject matter jurisdiction. Notably, though this application of § 7103(c) compels a non-dilatory resolution of CDA fraud claims, it does not immunize fraudulent conduct. The United States must instead rely on other less stringent provisions, some of which remain in play here.

### B. Issues of fact preclude summary judgment on liability.

The United States asserts that it is entitled to summary judgment on liability because Lodge anticipatorily repudiated the contract by failing to follow the Disputes clause when it declined to submit a new design for the failed cofferdam. (Def.'s Liability MSJ at 3, ECF No. 19). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court finds that several issues of material fact remain, and a trial is necessary to resolve those disputes. Primarily, the United States argues that Lodge breached the contract when it failed to provide a new cofferdam design. (*Id*. at 27–28). But the United States' argument and several of Lodge's defenses rely on disputed facts. For example, Lodge agreed that a new cofferdam design was necessary. (Pl.'s Ex. O, ECF No. 22-3). However, Lodge and the Corps disagreed as to the nature and extent of the design changes that would be necessary. One

---

[7] "The statute of limitations is jurisdictional." *Todd v. United States*, 292 F.2d 841, 844 (Fed. Cir. 1961). Although raised in Lodge's Cross-Motion for Summary Judgment, the Court finds dismissal of Counterclaim Count II is the appropriate remedy.

of Lodge's main concerns was the cost of producing and implementing a new design. (Pl.'s Ex. W at 637, ECF No. 22-5). But Lodge was further concerned with producing a new design based on an assessment by the Corps that Lodge had determined to be scientifically flawed. (Pl.'s Ex. BB, ECF No. 22-5). Lodge argues it was not refusing to submit a new cofferdam design but was seeking more analysis that would support a costly redesign.

Furthermore, Lodge's defenses rely on fact-intensive inquiries better suited for trial. For example, the United States argues that failure to proceed with requested performance renders Lodge in breach of the Disputes clause, entitling the United States to enter a default for termination against Lodge. (Def.'s Liability MSJ at 30). Lodge counters that this "duty to proceed" is not absolute, and requires a factual inquiry into the contract, the context of the parties' conduct, and the surrounding circumstances. (Pl.'s Opp. at 36, ECF No. 22). Lodge submits that its failure to perform can be excused by the United States' failure to cooperate in production of a new cofferdam design, and by failing to cooperate, the United States breached its duty of good faith and fair dealing. (*Id*.). This defense depends in part on whether Lodge was correct in its assertion that the Corps' original design analysis was fatally flawed. A trial is necessary to resolve these questions of fact, and thus summary judgment is inappropriate with respect to liability.

### C. Issues of fact preclude summary judgment on fraud.

The United States asserts it is entitled to summary judgment on its fraud counterclaims because Lodge submitted claims to the Corps that it knew to be false, then repeated those claims in documents later filed with this Court. (Def.'s Mot. for Sum. J. on Fraud ("Def.'s Fraud MSJ") at 1, ECF No. 20). The United States brings three specific fraud counterclaims against Lodge under three separate statutes: (1) a False Claims Act claim under 31 U.S.C. § 3729 *et seq*.; (2) a claim under the CDA's anti-fraud provision, 41 U.S.C. § 604; and (3) a Special Plea in Fraud claim under 28 U.S.C. 2514. (Case No. 13-500 Def.'s Am. Answer and Counterclaims). As explained above, Counterclaim Count II is dismissed.

Each of the two remaining claims requires the United States to show a level of knowledge and intent on the part of Lodge and its agents. The False Claims Act counterclaim requires actual knowledge, deliberate ignorance, or reckless disregard for the truth of a false or fraudulent claim. 31 U.S.C. § 3729. To prevail on this counterclaim, the United States must "prove all essential elements of the cause of action, including damages, by a preponderance of the evidence." 31 U.S.C. § 3731. The Special Plea in Fraud counterclaim has even more demanding standards. To prevail under 28 U.S.C § 2514, the United States must establish, by *clear and convincing evidence*, that the contractor submitted claims with knowledge of their falsity and with an intent to defraud the United States government. *Veridyne*, 758 F.3d at 1376–77.

These scienter requirements require the Court to assess the credibility of several Lodge principals and employees. A trial is the best vehicle to assess credibility of witnesses and determine scienter, which is why summary judgment for fraud claims is rarely appropriate. *See Rimade Ltd. v. Hubbard Enterprises, Inc.*, 388 F.3d 138, 144 (5th Cir. 2004) ("[S]ummary judgment is rarely proper in fraud cases because the intent required to establish fraud is a factual question 'uniquely within the realm of the trier of fact because it so depends upon the credibility

of witnesses.'") (quoting *Beijing Metals & Mins. Imp./Exp. Corp. v. Am. Bus. Ctr., Inc.*, 993 F.2d 1178, 1185 (5th Cir. 1993)); *Van v. Thomas*, 236 F. App'x 498, 504 (11th Cir. 2007) ("Ordinarily, the issue of fraud is not a proper subject of a summary judgment.") (quotations omitted); *Garter-Bare Co. v. Munsingwear, Inc*, 622 F.2d 416, 422 (9th Cir. 1980) ("Fraud claims normally are so larded with fact issues (including issues as to intent) that summary judgment is seldom possible."); *Federal Deposit Ins. Co. v. Lauterbach*, 626 F.2d 1327, 1335 (7th Cir. 1980) ("In a case in which the party moving for summary judgment urges that fraud be found, summary judgment will often be inappropriate because the district court would be required to resolve the subjective issue of fraudulent intent."). Therefore, the United States' counterclaims, like most fraud claims, cannot be resolved without a trial.

### III. Conclusion

Counterclaim Count II is time-barred and must be dismissed. Surreplies are not necessary. Issues of fact preclude summary judgment for the United States on liability. Issues of fact, namely issues of credibility, preclude summary judgment for either party on fraud. In conclusion, the Court orders the following:

(1) Lodge's Motion for Leave to file surreplies, (ECF No. 26), is **DENIED**.

(2) The United States' Motion for Summary Judgment on Liability, (ECF No. 19), is **DENIED**.

(3) The United States' Motion for Summary Judgment on Fraud, (ECF No. 20), is **DENIED**.

(4) Lodge's Cross-Motion for Summary Judgment, (ECF No. 21), is **DENIED**.

(5) The United States' Counterclaim Count II is **DISMISSED** for lack of subject matter jurisdiction.

**IT IS SO ORDERED.**



s/  David A. Tapp
DAVID A. TAPP, Judge