# In the United States Court of Federal Claims

No. 13-499
Filed: April 14, 2022

|  |
|---|
| **LODGE CONSTRUCTION, INC.,** <br><br> *Plaintiff,* <br><br> v. <br><br> **THE UNITED STATES,** <br><br> *Defendant.* |

*Michael H. Payne*, Cohen Seglias Pallas Greenhall & Furman, Philadelphia, PA, and *Edward Parrott*, Watt, Tieder, Hoffar & Fitzgerald, L.L.P., McLean, VA, for Plaintiff.

*John H. Roberson*, Senior Trial Counsel, with whom were *Steven Hough*, Trial Attorney, *Ioana Cristei*, Trial Attorney, *Deborah A. Bynum*, Assistant Director, *Martin F. Hockey, Jr.*, Acting Director, Commercial Litigation Branch, and *Brian M. Boynton*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

    This is an epilogue. The history of this case is extensive and well-documented. *See, e.g.*, *Lodge Constr.*, *Inc. v. United States*, No. 13-499, __ Fed. Cl. __, 2022 WL 92659 (Fed. Cl. Jan. 10, 2022) (Post-Trial Opinion, docketed at ECF No. 89). Following trial and the Court's Post-Trial Opinion, the parties filed three motions for reconsideration regarding various issues, new and old, and two motions seeking disposal of Lodge Construction, Inc.'s ("Lodge") wrongful termination claim. (ECF Nos. 95–99).

    First, the United States moves for summary judgment on Lodge's wrongful termination claim. (USA MSJ, ECF No. 95). Second, the United States moves for reconsideration of the Court's April 14, 2021 Opinion and Order dismissing the United States' Counterclaim Count II, a fraud counterclaim brought under the Contract Disputes Act's ("CDA") anti-fraud provision—41 U.S.C. § 7103(c)(2). (USA MTR Dism., ECF No. 96). Third, Lodge moves for reconsideration of the Court's Status Conference Order, (ECF No. 94), insofar as that Order permitted the United States to begin discovery related to piercing Lodge's corporate veil; Lodge further requests that the Court quash the subpoenas the United States issued to third parties. (Lodge MTR Veil Disc., ECF No. 97). Fourth, rather than respond to the United States' Motion for Summary Judgment on Lodge's wrongful termination claim, Lodge moves to voluntarily dismiss that claim under RCFC 41(a). (Lodge R41 MTD, ECF No. 98). Fifth and finally, Lodge

moves for reconsideration of the Court's Status Conference Order insofar as it contemplates a second trial to resolve its fraud liability for claims Lodge passed through from its subcontractor, Civil Construction Technologies, Inc. ("CCT"). (Lodge MTR Trial, ECF No. 99). The Court begins with an explanation as to why the Court will not now, at this late stage, revive the United States' CDA counterclaims.

I. **The Court will not revisit its determination that the United States' CDA counterclaims are time-barred.**

Almost one year ago, this Court issued an Opinion and Order denying the parties' cross-motions for summary judgment, dismissing the United States' CDA counterclaims, and teeing this case up for a trial on the remainder of the United States' fraud counterclaims. *Lodge Constr., Inc. v. United States*, 153 Fed. Cl. 430 (2021). Only now, after a trial of fraud issues and the determination that Lodge committed violations of the False Claims Act and, therefore, must forfeit certain claims under the Special Plea in Fraud, the United States seeks to revive its CDA counterclaims. (USA MTR Dism. at 1). The United States contends that the Court erred by failing to "consider the facts and law of fraudulent concealment" in finding the United States was time-barred from asserting counterclaims under the CDA's anti-fraud provision, 41 U.S.C. § 7103(c)(2).[1] (*Id.* at 5). In response, Lodge argues that § 7103(c)(2) is a statute of repose that is not subject to equitable tolling. (Lodge Resp. at 8, ECF No. 100). While intriguing, the Court need not reach that question.

Pursuant to RCFC 54(b), the Court has discretion to reconsider its interlocutory opinions and orders "as justice requires." *E&I Glob. Energy Servs., Inc. v. United States*, 152 Fed. Cl. 524, 533 (2021). However, as the Court has previously noted and stresses again, interlocutory opinions are not merely first drafts inviting revisions and comments as disappointed litigants see fit. *Id.*; *see also Dixon v. Shimenski*, 741 F.3d 1367, 1378 (Fed. Cir. 2014) (quoting *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.")) (internal quotation marks omitted). Despite the strength of this admonition, litigants routinely ignore it. Stated plainly: motions to reconsider are seldom appropriate. Consideration of such motions should be preceded by a period of intensive introspection which cautiously considers well-established strictures governing such reconsideration. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999) ("A party's argument should not be a moving target."); *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1231 (3d Cir. 1995) (rejecting a motion for reconsideration as a "second bite at the apple" and explaining that "[h]aving failed in its first effort to persuade the court," the plaintiff "simply changed theories and tried again"). To proceed otherwise, as seems to be the current practice, is to impose an unjustifiable onus upon a litigant who has already successfully borne their burden, imposing additional unwarranted expense, and unnecessarily prolonging resolution. A motion for reconsideration should not enable a party to "sandbag" its adversary. *See Senza–Gel Corp. v. Seiffhart*, 803 F.2d 661, 663–64 (Fed. Cir. 1986) (discussing this disfavored strategy in the context of motions to reconsider

---

[1] "Liability . . . shall be determined within 6 years of the commission of the misrepresentation of fact or fraud." 41 U.S.C. § 7103(c)(2).

under FRCP 59(e) and 60). Hence, in many instances, a "presumption against reconsideration makes sense." 18B Wright & Miller, Federal Practice and Procedure § 4478.1 (3d ed. 2022). Here, after Lodge has been subjected to trial, civil penalties under the False Claims Act, and forfeiture of some claims, notions of justice mitigate against revisiting a year-old decision regarding the time constraints of the CDA's plainly worded anti-fraud provision. *See McSurely v. McClellan*, 753 F.2d 88, 96 (D.C. Cir. 1095) (noting that as litigation "wend[s] closer to final disposition, stability takes on increased importance.") (cleaned up). However, as the United States' motion overstates its earlier arguments with respect to equitable tolling, clarification is appropriate.

As an initial matter and as already suggested, the United States' timing is frustrating. The United States only filed its motion for reconsideration *after* a trial that resolved most fraud issues. The Court dismissed the United States' claims on April 14, 2021. *Lodge Constr., Inc.*, 153 Fed. Cl. 430 (docketed at ECF No. 31). Approximately four months later, starting August 2, 2021, trial began. Judgment against Lodge has issued. (ECF No. 90). The time for appeal has expired. RCFC 58.1; FRAP 4. Setting the merits of its argument aside, the United States asks to turn back time when time itself is the issue. Entertaining such a belated request presents at least two practical problems for the speedy and just resolution of this case. First, Lodge would be prejudiced by having to endure either a second trial or second round of briefing on a long-settled issue after the parties have already had a full and fair opportunity to litigate this issue. The salience of that concern is magnified by the significantly stiffer penalties contained in the CDA's anti-fraud provision. Second, the underlying case is nearly a decade old. Even if the United States were to prevail on this CDA issue, the United States does not offer a date from which it believes the statute of limitations should begin to run or cease to be tolled. Potentially, even applying equitable tolling until mid-to-late 2016, when the United States asserts its fraud suspicions were first raised, (USA MTR Dism. at 8, 11, 13), six years would pass from the end of the tolling period, and the Court would have not yet determined that Lodge was liable for fraud under the CDA.[2]

Even more importantly, the United States muddles the arguments previously raised in its earlier briefing. (Def.'s Reply and Resp. at 3, ECF No. 24 (responding that "Lodge's [statute of limitations] argument fails because it ignores the doctrine of *equitable tolling* and the *discovery rule*, which forestall the running of the statute of limitations until the fraud is known or should have been known.") (emphasis added)). The United States did not raise a fraudulent concealment argument. That omission is significant, and the Court will not consider an argument not previously presented.

---

[2] Although there is considerable overlap between the False Claims Act and the CDA's anti-fraud provision, it would not be so simple as to impute all of Lodge's fraud that the Court found violated the False Claims Act into a fraud claim under the CDA. For example, the Court would need to determine whether the alleged acts of concealment relevant to the settlement agreement thwarted the United States' pursuit of an actionable CDA claim. The answer to that question is not a foregone conclusion. *See Hanover Insurance Co. v. United States*, Case No. 20-11989-PBS (D. Mass. Sept. 20, 2021) (holding that a maintaining a civil complaint is not a "claim" under the CDA).

Admittedly, the overlap of the discovery rule and fraudulent concealment with similar doctrines can be "terribly confusing[.]" Transcript of Oral Argument at 23, *Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) (No. 18-328) (Sotomayor, J.). Fraudulent concealment is a basis for equitable *estoppel*, not equitable *tolling*; those two doctrines are distinct. Additionally, applying either equitable doctrine—tolling or estoppel—becomes even more confusing when the party raising them attempts to prevent the statute of limitations from running on its substantive fraud claims. The United States did not raise a "fraudulent concealment" argument, much less meet its burden to establish that either equitable doctrine applies. *Lodge Constr., Inc.*, 153 Fed. Cl. at 438 (holding that "[t]o the extent that the briefing meagerly addresses [equitable tolling]," the United States had not met its burden to demonstrate its application.). In fact, in the four-and-a-half pages the United States devoted to responding to Lodge's arguments regarding the CDA statute of limitations, the words "conceal" or "concealment" do not appear even once! The United States' suggestion of, "well, that's what we meant," is not supported by any fair reading of its prior briefing.[3] As a background rule, federal courts apply equitable tolling principles sparingly. *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 90 (1990). It would be inconsistent with that background principle for the Court to find that fraudulent concealment applies here given how little attention the United States devoted to the issue in its initial Reply and Response.

The discovery rule, equitable estoppel, and equitable tolling are three distinct doctrines that bear on the statute of limitations. Judge Posner sorted out the confusion in *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446 (7th Cir. 1990)—a decision that Justice Breyer has referred to as his "Bible" on the interplay of fraud, equitable tolling, equitable estoppel, and the discovery rule. Transcript of Oral Argument at 20, *Rotkiske*, 140 S. Ct. 355 (Breyer, J.). In *Cada*, Judge Posner explained the distinction between accrual of a claim and tolling. Accrual of a claim is postponed by the discovery rule, which refers to the date on which the claimant "discovers he has been injured[,]" *not* "the date on which the wrong that injured the [claimant] occurs[.]" *Cada*, 920 F.2d at 450. On the other hand, "[t]olling doctrines stop the statute of limitations from running even if the accrual date has passed." *Id*.

The Court has already explained that *Gabelli v. S.E.C.* forecloses the discovery rule's application to actions enforcing the CDA's antifraud civil penalty. *Lodge Constr., Inc.*, 153 Fed. Cl. at 436 (citing *Gabelli* for analysis of the discovery rule, not fraudulent concealment); *Gabelli*

---

[3] The United States spent most of those four-and-a-half pages in its briefing litigating the application of the discovery rule, a theory distinct from fraudulent concealment. The only excerpt from the United States' Reply and Response that could even plausibly contain an assertion of fraudulent concealment or affirmative acts to conceal wrongdoing is the following sentence: "The doctrine of equitable tolling allows for the tolling of the statute of limitations where a complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." (Def.'s Reply and Resp. at 3 (citing two cases that, likewise, do not mention fraudulent concealment)). Even an expansive reading of this sentence, when placed in the context of the United States' brief and the factual assertions contained within, does not reveal a "fraudulent concealment" argument. The Court need not consider cursory arguments. *See, e.g.*, *Sprint Corp. v. Dep't of the Interior*, 356 F. Supp. 3d 12, 27 (D.D.C. 2018) ("The Court need not address an argument raised only cursorily in a footnote."); *Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284, 298 (D.D.C. 2012) (same).

*v. S.E.C.*, 568 U.S. 442 (2013) (holding that the discovery rule does not apply to civil penalty enforcement actions); *Daewoo Eng'g & Const. Co. v. United States*, 557 F.3d 1332 (Fed. Cir. 2009) (describing 41 U.S.C. § 7103(c)(2) as a "penalty"); *see also Hernandez, Kroone & Assocs., Inc. v. United States*, 110 Fed. Cl. 496, 529 n.8 (2013) ("[r]ecovery under 41 U.S.C. § 7103(c)(2) comprises a civil penalty."). Thus, the United States must rely on one of the tolling doctrines, rather than the discovery rule, to avoid the statute of limitations.

Under the tolling umbrella, there are two often-confused doctrines: (1) equitable estoppel; and (2) equitable tolling. *Cada*, 920 F.2d at 451. Equitable estoppel estops a party from pleading the statute of limitations as a defense when that party has "take[n] active steps to prevent the [claimant] from suing in time[.]" *Id*. at 450–51. Equitable estoppel is colloquially known as "fraudulent concealment." *Id*. Equitable estoppel, i.e., fraudulent concealment, requires an affirmative act to obstruct the claimant's prosecution of a known claim that is distinct from the conduct which gave rise to the cause of action. *Id*. at 451 ("Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—*above and beyond the wrongdoing upon which the plaintiff's claim is founded*—to prevent the plaintiff from suing in time.") (emphasis added). Where the question is whether the statute of limitations on a fraud claim may be estopped, courts must be careful not to confuse efforts to conceal the substantive fraud act with subsequent "active steps" to thwart the pursuit of a fraud claim. *Id*. ("Equitable estoppel in the limitations setting is sometimes called fraudulent concealment, *but must not be confused with efforts by a defendant in a fraud case to conceal the fraud*.") (emphasis added). Efforts to conceal the fraud to prevent the detection and initiation of a fraud suit fall under the discovery rule, not equitable estoppel (aka, fraudulent concealment), as they prevent a claimant from *discovering* the injury. *Id*.

Equitable tolling, on the other hand, "permits a [claimant] to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada*, 920 F.2d at 451. Equitable tolling is frequently confused with both the discovery rule and equitable estoppel:

> Equitable tolling is frequently confused both with fraudulent concealment on the one hand and with the discovery rule—governing, as we have seen, accrual—on the other. It differs from the former in that it does not assume a wrongful—or any—effort by the defendant to prevent the plaintiff from suing. It differs from the latter in that the plaintiff is assumed to know that he has been injured, so that the statute of limitations has begun to run; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant.

*Id*. Under the equitable tolling doctrine, the statute of limitations begins to run once the claimant is aware of a *possible* claim—the claimant *need not be certain* their rights have been impaired. *Id*. ("The qualification 'possible' is important. If a [claimant] were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty.") (emphasis in original).

In fraud suits, where the fraudster does not readily disclose their wrongdoing, the

5

application of these three doctrines can be confusing. But that nuance and distinction was not captured in the United States' Reply and Response to Lodge's statute of limitations argument. The United States raised "equitable tolling," (Def.'s Reply and Resp. at 3), discussed the delayed efforts to obtain evidence of scienter, (*id*. at 5), and argued that its fraud claim did not accrue until some period after Lodge submitted its claims to the Contracting Officer, (*id*.). While these three arguments present an amalgam containing elements of both the discovery rule and equitable tolling, they do not allege affirmative wrongful acts that prevented the United States from asserting fraud claims as required by the equitable estoppel "fraudulent concealment" doctrine the United States now invokes. *See Rotkiske*, 140 S. Ct. at 364 n.\* (Ginsberg, J. dissenting) ("The two doctrines are often blended or confused . . .. But as this Court recently clarified [in *Gabelli*], each doctrine has an independent office."). And, as mentioned previously, the United States did not cite "fraudulent concealment," much less make any mention of post-fraud affirmative acts to "conceal" the evidence the United States needed to pursue the fraud.[4] While the United States may have aimed for equitable estoppel within its brief, it missed, only hitting the discovery rule and equitable tolling. Additionally, despite bearing the burden to do so, the United States previously failed to establish that either the discovery rule or the equitable tolling doctrine applied when the statute of limitations issue was first presented. *Lodge Constr., Inc.*, 153 Fed. Cl. at 438; *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing [its elements]."); *see also Menominee Indian Tribe of Wisconsin v. United States*, 577 U.S. 250, 256 (2016); *Redding v. District of Columbia*, 828 F. Supp.2d 272, 282 (D.D.C. 2011) ("[I]t is the [claimant's] burden to raise and prove an equitable tolling defense.").

But even if the Court were to revisit its prior decision and consider the United States' untimely application of the fraudulent concealment doctrine, the Court queries whether the United States' newly presented factual bases qualify as "active steps" necessary to support application of the doctrine. *Cada*, 920 F.2d at 451; s*ee also Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1143 (Fed. Cir. 1996) (holding that the party seeking to toll the statute of limitations due to fraudulent concealment must show the counterparty "actively concealed its wrongdoing."). The United States now (post-trial) argues that Lodge (1) failed to disclose that the age and value of its equipment differed from those qualities that would support the operating and standby rates Lodge utilized, (USA MTR Dism. at 7–9); (2) failed to disclose information in support of its fraudulent "Inefficiency Ratio," (*id*. at 9–11); and (3) failed to disclose the existence of a settlement agreement between Lodge's surety and its subcontractor, (*id*. at 11–14). Facially, much of that alleged conduct appears passive rather than active concealment of wrongdoing. Furthermore, Lodge produced much of the information forming the basis for the United States' fraud claims in 2014 and, in the case of the settlement agreement,

---

[4] Notably, like the Court, Lodge did not read the United States' brief as raising allegations of affirmative acts of misconduct that would be necessary to establish fraudulent concealment. (Lodge's Reply in Support of xMSJ at 15–17, ECF No. 25 ("[T]he United States' Opposition dedicates only a single paragraph to citing general legal principles of "equitable tolling." But the United States makes no attempt to establish the applicability of this doctrine. . . . Moreover, none of these allegations involve affirmative misconduct by Lodge to 'trick' the United States to fail to litigate any claim of fraud within six years[.]") (citations to the United States' brief omitted))

2016;[5] the United States primarily lacked only evidence of the requisite fraudulent intent. (Tr. of Hearing at 21:9–22:16, ECF No. 110).

      Although there is some ambiguity as to the date on which the United States believed it had a full accounting of Lodge's misrepresentations,[6] the United States concedes that it had this information at the time the statute of limitations was first invoked. (*Id.* at 25:11–26:4). The United States chose not to assert it in the appropriate response brief for strategic reasons. (*Id.* ("If [in an earlier motion] we had made all the arguments I'm making to you now, it might have just been words going—just too many words, too many concepts. . . . it makes sense for us to have waited for the evidence to come in and for the Court to . . . see that there was fraudulent concealment.")). Courts widely disfavor the practice of using motions for reconsideration to present previously known facts and arguments for the first time; the undersigned not excepted. *See, e.g.*, *Robinson v. District of Columbia*, 296 F. Supp. 3d 189, 192 (D.D.C. 2018) ("[I]t is well-established that [Rule 54(b)] motions for reconsideration cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, *nor as a vehicle for presenting theories or arguments that could have been advanced earlier*.") (emphasis added). Aside from the Court's concerns regarding piecemeal litigation strategies, the fact that the United States has long possessed the evidence supporting its fraud claims undercuts the basis of the fraudulent concealment doctrine—a doctrine premised on one party's conduct that thwarts the pursuit of claims against it.

      Should the Court consider whether the fraudulent concealment doctrine applied on the three new bases the United States now articulates, the Court would be required to analyze how Lodge's failure to make disclosures, which is seemingly passive conduct, could be construed as active, affirmative acts of concealment. *Cf. Simmons Oil Corp.*, 86 F.3d at 1143 ("[A] mere failure to come forward with facts that would provide the plaintiff with a basis for suit does not constitute fraudulent concealment."). However, this case, nearly a decade in the making, cries out for finality rather than additional extended litigation. *See In re Baxter Int'l, Inc.*, 678 F.3d 1357, 1368 (Fed. Cir. 2012) (Newman, J. dissenting) ("Finality is reflected in the law of the case doctrine, which 'promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues.'") (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815–16 (1988)). The United States could have raised those facts in opposition to Lodge's brief that sought application of the statute of limitations, or even in a motion to reconsider shortly after the Court's decision, still months ahead of trial. It chose not to do so. Protracted litigation to consider these weighty questions under the facts presented now would be

---

[5] The Court previously discussed the failure to produce this settlement agreement in some detail. *See generally Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51 (2017). Although the United States propounded requests for production on both Lodge and its surety (Hanover Insurance), it was the surety, rather than Lodge, that failed to disclose the settlement agreement. (*See* Decl. from Hanover, Case No. 13-500, ECF No. 199; Tr. of October 13, 2020 Status Conference, Case No. 13-500). Therefore, another issue the Court would need to consider related to the fraudulent concealment doctrine is Lodge's role in that failure and whether the surety's conduct can be fairly attributed to Lodge. Those issues have not been raised by either party.

[6] The United States did not submit a supporting declaration on this point.

7

unjust, even if the United States had preserved its fraudulent concealment argument.

While the Court's prior decision was interlocutory, justice does not require the Court to allow the United States to amend its prior response to assert a new argument premised on fraudulent concealment. *Wilson v. Sellers*, 138 S. Ct. 1188, 1199 (2018) ("In our adversarial system a federal court generally isn't required to imagine or hypothesize arguments that neither the parties before it nor any lower court has presented."). Not only would reversal of its prior order present practical obstacles severely prejudicing Lodge, but the United States waited nearly a year after failing to raise (or clarify) an argument that was previously available. *Bos. Edison Co. v. United States*, 156 Fed. Cl. 632, 637 (2021) ("A motion for reconsideration [under RCFC 54(b)] is also unavailing where the moving party 'raise[s] an issue for the first time that was available to be litigated earlier in the case.'") (quoting *Martin v. United States*, 101 Fed. Cl. 664, 671 (2011), *aff'd sub nom. Fournier v. United States*, No. 2012-5056, 2012 WL 6839784 (Fed. Cir. Nov. 27, 2012)). But even if fraudulent concealment had been preserved and then reasserted with the factual bases belatedly presented in the United States' current Motion for Reconsideration, the Court is skeptical whether the doctrine would apply to Lodge's facially passive conduct here.

Importantly, this decision should not be read as even the mildest endorsement of Lodge's behavior; its fraudulent conduct was egregious and significant. But the nature of the underlying misconduct in a fraud prosecution can never be the basis for expansion of an applicable limitations period. Although the United States' confusion between the discovery rule and tolling doctrines is understandable, its attempt to convince the Court that it previously raised an argument, when it clearly did not, is unavailing.

## II. A second trial regarding the passed-through claims is unwarranted.

The United States next urges that a second trial is necessary to resolve Lodge's fraud liability for passing through and maintaining claims from its subcontractor, CCT. (Tr. of Post-Trial Conf. at 12:2–8, ECF No. 93). At that time, the Court declined to address that issue but probed the timeline on which such a trial would proceed. (*Id.*). In the Court's Status Conference Order, in the interests of judicial economy and without affixing a trial date, the Court requested that the parties provide potential pre-trial dates for a trial that would commence sometime in June 2022. (Status Conference Order at 2). The Court is now convinced a second trial is unwarranted.

Federal courts may only adjudicate live cases and controversies. *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 478 (1990) ("Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies."); *Anderson v. United States*, 344 F.3d 1343, 1350 (Fed. Cir. 2003) ("The Court of Federal Claims . . . applies the same standing requirements enforced by other federal courts created under Article III."). A claim or issue becomes moot when the party pursuing that claim lacks a legally cognizable interest in its resolution. *Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").

The United States' counterclaims asserting that Lodge is liable for fraud in its submission and maintenance of claims passed through from its subcontractor, CCT, (the "CCT Claims") are

moot. Lodge submitted the CCT Claims within its Dewatering and Design claims. (*See* Lodge MTR Trial at 4). After trial, the Court found both Lodge's Dewatering and the Design claims to be fraudulent, forfeited them under 28 U.S.C. § 2514 (the Special Plea), and imposed an $11,000 civil penalty for each under the False Claims Act. *Lodge Constr., Inc.*, __ Fed. Cl. __, 2022 WL 92659 at *34, *35 (Post-Trial Opinion). In its Post-Trial Opinion, the Court determined that, in counting False Claims Act penalties, only two penalties could attach for the various fraudulent acts that culminated in Lodge's submission of two fraudulent claims to the Contracting Officer. *Id*. at *34. Therefore, as the CCT Claims are part of the Dewatering and Design claims, no further False Claims Act liability may attach. Moreover, a determination that individual components of the Dewatering and Design claims need to be independently forfeited would be meaningless, as the Court has already ordered forfeiture of those claims in their entirety. *Id*. at *35; (*see also* Tr. of Hearing at 44:23–45:2 (Lodge's concession that the CCT Claims had been forfeited)). Consequently, no live controversy remains with respect to the CCT Claims.

The United States no longer has a legally cognizable interest in a determination under either the False Claims Act or the Special Plea with respect to the CCT Claims. Furthermore, as the Court explained above, the United States' CDA counterclaims have been dismissed and will remain so. The United States has not articulated any other legally cognizable interest that could be vindicated via trial on the CCT Claims. Therefore, the United States' counterclaims related to the CCT Claims are moot.

### III.      There is no basis for further discovery regarding veil piercing remedies.

The Court has jurisdiction to "entertain veil piercing as a counterclaim remedy." (Status Conference Order at 2 (citing *Alli v. United States*, 83 Fed. Cl. 250 (2008) and *Twin City Shipyard, Inc. v. United States*, 21 Cl. Ct. 582, 590 (1990))). In the interests of judicial economy, the Court directed the parties to begin discovery on the veil piercing remedy. (Status Conference Order at 2). The posture of this litigation has since altered.

Lodge argues that, by satisfying the $22,000 False Claims Act judgment against it, further liability imputed to natural persons behind the corporate veil is a moot issue, and the United States' subpoenas to third parties should be quashed.[7] (Lodge MTR/MTQ Veil Disc. at 1–2, ECF No. 101). The Court agrees.

The United States concedes that the $22,000 judgment has been satisfied and Lodge has no other monetary judgment outstanding.[8] (*See* Tr. of Hearing at 53:16–54:15; 33:4–10). Veil piercing is merely a remedy that ensures individuals with interest in a corporate entity are not

---

[7] Lodge also requests that the Court reevaluate whether it possesses jurisdiction to entertain an equitable veil piercing remedy and that veil piercing would be inappropriate without joinder of the natural persons behind the corporate veil. (Lodge MTR/MTQ Veil Disc. at 2). The Court need not address these arguments given Lodge's satisfaction of its monetary obligations.

[8] Lodge's motion to reconsider, unlike the overwhelming majority of such motions, is proper because an important intervening fact occurred—complete satisfaction of Lodge's monetary sanctions.

shielded from liability due to their abuse of the corporate form. *See In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1376 (Fed. Cir. 1999) ("The concept of 'piercing the corporate veil' is equitable in nature and courts will pierce the corporate veil 'to achieve justice, equity, to remedy or avoid fraud or wrongdoing, or to impose a just liability.'") (quoting 1 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 41.20, at 598–601, 603 (Perm. ed. 1999)). One of those methods of abuse is undercapitalization, which prevents a judgment creditor from gaining the full satisfaction of their judgment against the corporate entity. *See Labadie Coal Co. v. Black*, 672 F.2d 92, 96 (D.C. Cir. 1982) ("when particular circumstances merit—*e.g.,* when the incentive value of limited liability is outweighed by the competing value of basic fairness to parties dealing with the corporation—courts may look past a corporation's formal existence to hold shareholders or other controlling individuals liable for 'corporate' obligations."). However, where a judgment against the entity is satisfied, there is no injustice in continuing to recognize the corporate form and no need to impose further liability behind the veil.

Therefore, with no judgment currently outstanding that natural persons would potentially be required to satisfy, the United States no longer has a legally cognizable interest in piercing the corporate veil. Furthermore, having determined that the CDA counterclaims remain dismissed and that no further False Claims Act liability may attach to the CCT Claims, the United States does not identify another source of monetary liability for which Lodge, as an entity, may be unable to satisfy a monetary judgment. (USA Resp. to MTR/MTQ, ECF No. 101). Consequently, continued discovery related to veil piercing is unwarranted.

### IV. Lodge's wrongful termination claim is dismissed with prejudice under RCFC 41(a).

Both parties appear to agree that Lodge cannot maintain its wrongful termination claim, an issue left unresolved by the Court's Post-Trial Opinion. *Lodge Constr., Inc.*, __ Fed. Cl. __, 2022 WL 92659 at *34 n.21. However, the parties disagree on how to accomplish its disposal.

Lodge wishes to voluntarily dismiss the wrongful termination claim with prejudice under RCFC 41(a)(2). (Lodge R41 MTD at 1). The United States, on the other hand, requests that the Court forfeit that claim and enter judgment against Lodge. (USA MSJ at 1). The United States argues that the Court "should not provide Lodge with [the] courtesy or luxury" of a Rule 41(a) dismissal, and instead hold that Lodge's claim is forfeited due to the fraudulent conduct that resulted in the forfeiture of Lodge's other affirmative claims. (USA Resp. to R41 MTD at 2, ECF No. 103). The United States asserts interests in the deterrent effects of forfeiture and related litigation in the Middle District of Florida. (*Id.*). However, the United States' position would require the Court to unnecessarily plow new ground regarding the scope of forfeiture under the Special Plea, 28 U.S.C. § 2514, without the benefit of full briefing on the issue. And, as Lodge points out, the United States' stated motivations for seeking a forfeiture judgment rather than agreeing to dismissal are misplaced because (1) the Court's 45-page Opinion detailing Lodge's fraud adequately serves any interest in deterrence, and (2) neither forfeiture nor dismissal would resolve the merits of the wrongful termination claim and thus would not affect litigation in

Florida.[9] (Lodge Reply in Supp. of Dism. at 3–5, ECF No. 107). The Court agrees with Lodge.

> Rule 41(a)(2) provides:
>
> > [A]n action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If the defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.

RCFC 41(a)(2). The Court "has considerable discretion in deciding whether to dismiss a case with or without prejudice, and such dismissal will not be overturned except upon a finding of abuse of discretion." *Fala Corp. v. United States*, 53 Fed. Cl. 90, 91 (2002). "No precise formula governs dismissals with prejudice. The decision largely hinges on the equities of the case, with due regard for the interests of both parties." *Deuterium Corp. v. United States*, 21 Cl. Ct. 132, 134 (1990).

Here, Lodge agrees to a dismissal with prejudice and acknowledges that the United States' counterclaims would be unaffected by such a dismissal.[10] (Lodge R41 MTD at 2; Lodge Reply in Supp. of Dism. 5). Therefore, there is no need for the Court to resolve whether Lodge's wrongful termination claim, which arose after the submission of the fraudulent claims, is subject to the forfeiture sanction mandated by 28 U.S.C. § 2514.[11] *See Air Courier Conference v. Postal Workers*, 498 U.S. 517, 531 (1991) (the doctrine of judicial restraint counsels decisions on "the best and narrowest ground available.") (Stevens, J. concurring). Lodge's Complaint in Case No. 13-499 is dismissed with prejudice. Consequently, the United States' Motion for Summary Judgment, (ECF No. 95), is denied as moot.

---

[9] While the monetary penalties heretofore imposed are modest, they nevertheless are equal to the maximum authorized by Congress. *See* 31 U.S.C. § 3729(a)(1). In addition, the additional consequences of Lodge's misconduct should not be ignored. Lodge's multiple claims for substantial sums due from the United States have been withdrawn or forfeited. Lodge is the subject of a fraud determination which will likely adversely impact any future possible public, and perhaps private, economic opportunities. It has suffered the burden of a decade of contentious litigation. It is, presumably, liable for a potentially large bill of costs. *See* RCFC 54(d). And lastly, Lodge forewent its appeal opportunity thereby leaving intact the Court's fraud determinations.

[10] The Court in unable, at this stage, to determine what impact, if any, dismissal versus judgment would have on entitlement to costs. Neither party has broached this issue.

[11] This decision should not be read as an endorsement of Lodge's arguments that its wrongful termination claim is outside the scope of forfeiture. The United States has presented a compelling argument that, when the Court finds that a party has practiced fraud in the performance of a government contract, all claims brought by the contractor related to that contract must be forfeited. However, since the posture of this case allows the Court to punt that determination, the Court exercises judicial restraint to do so.

## V. Conclusion

The Court has issued several decisions in this case that, together with this Order, have fully adjudicated Lodge's claims and the United States' counterclaims in this consolidated action. Previously, the Court disposed of all but one of Lodge's causes of action and adjudicated all three of the United States' counterclaims. (*See* Post-Trial Opinion; Rule 54(b) Judgment, ECF No. 90 (entering Judgment in favor of the United States on Counterclaim Counts I & III and forfeiting Lodge's Complaint in Case No. 13-800); Opinion and Order, ECF No. 31 (dismissing the United States' Counterclaim Count II as time-barred)). This Order (1) clarifies that the United States achieved full relief on its counterclaims through those decisions, and (2) dismisses Lodge's final cause of action—its wrongful termination claim—pursuant to Rule 41(a)(2). Accordingly, this Order constitutes a final adjudication and decision in this action. This case shall be closed without further judgments.

Based on the foregoing, the Court **ORDERS** the following:

(1) The United States' Motion for Reconsideration of the Court's Order dismissing the CDA anti-fraud counterclaims, (ECF No. 96), is **DENIED**.

(2) Lodge's Motion for Reconsideration, (ECF No. 99), is **GRANTED IN PART**. The United States' counterclaims, as they related to the CCT Claims, are **DISMISSED AS MOOT**, and the Court does not intend to hold a second trial in this matter.

(3) Lodge's Motion for Reconsideration/Motion to Quash, (ECF No. 97), is **GRANTED**.

(4) The portion of the Court's February 3, 2022, Status Conference Order directing the parties to begin discovery on veil piercing issues is **VACATED**.

(5) All subpoenas, interrogatories, and documents requests issued by the United States in connection with a veil piercing remedy are **QUASHED**.

(6) Lodge's Motion to Dismiss its Complaint in Case No. 13-499, (ECF No. 98), is **GRANTED**. Lodge's wrongful termination claim is **DISMISSED WITH PREJUDICE** pursuant to RCFC 41(a)(2).

(7) The United States' Motion for Summary Judgment, (ECF No. 95), is **DENIED AS MOOT**.

(8) The Clerk is **DIRECTED TO ENTER JUDGMENT** dismissing this case.

**IT IS SO ORDERED.**

s/ David A. Tapp
DAVID A. TAPP, Judge